RAWLS, Acting Chief Judge
(dissenting).
This appeal involves a battle over the custody of two small children. Appellant father challenges the trial court’s order granting custody to the mother.
Late in 1970, the parties were married and living in Marion County, Tennessee. The wife initiated a divorce action which culminated in a final decree of divorce entered by the Tennessee court on February 3, 1971. The final decree states in pertinent part:
“. . . custody of the two minor children, Greggory Carter, age 3, and Kelly Ann age 9 months, be temporarily vested in the parents of the defendant, Don C. Smith, JOE & WILLIE MAY SMITH, and shall be removed to their home in Florida for a period of eight months, subject to further orders of this Honorable Court.”
The final decree further provided that a ne exeat bond be posted by the paternal grandparents in the sum of $5,000.00, which they failed to do.
Immediately after the final decree was entered, the children were moved to the grandparents’ home in Duval County, Florida, and the husband immediately moved from Tennessee to his parents’ home to live with his children. Approximately a month after her divorce, the mother married a neighbor, Mr. Carlos Kilgore, who had two children living at home. The minor children lived with their paternal grandparents and father for approximately one and a half years. In March of 1971, the father met his present wife and they dated for more than a year, during which time they jointly spent a great deal of time with the children. The father and his present wife were married on June 9, 1972. The children have lived continuously with the father and stepmother since their marriage. They call their stepmother “mommy” and recognize her as their natural mother.
*54 The manifest weight of the evidence in this case is that appellee, the children’s natural mother, was involved in a relationship with her neighbor which culminated in a divorce between he and his wife in January, 1971, and a divorce between the natural mother and father in February, 1971; with the natural mother agreeing to a temporary award of custody of her two infant children to the father’s parents and for their removal to Florida, and the marriage of the natural mother and her neighbor in March of 1971. The uncontradicted evidence is that these two infant children were suffering from malnutrition at the time they came to Florida to live with their paternal grandparents. And the record is further uncontradicted that these infant children have been well cared for and afforded an excellent home, and material and spiritual environment since they have resided in Florida with their paternal grandparents and father.
Likewise, the manifest weight of the evidence in this cause is that the paternal grandparents ignored the mandates of the Tennessee court as to the custody of the two minor children. The trial court was justifiably upset about the refusal on the part of the paternal grandparents to comply with orders of the Tennessee court, and such apparently influenced his ultimate decision[1] of awarding custody to the mother. I do not condone the disobedience of the Tennessee court’s order by the paternal grandparents; however, such is not the question in the instant cause. As the trial court correctly found, the Florida court had jurisdiction of these children, and thus the cardinal canon applies that the welfare of the child is the sole pole star to be viewed.
I am fully in accord with Justice Adkins’ statement in Dinkel v. Dinkel[2] that: “It is the function of the trial judge in a child custody proceeding to determine what is in the best interests of the child.”, and that an appellate court should not disturb the trial judge’s findings absent a showing of abuse of discretion. However, I do not construe Dinkel as eliminating the question of “abuse of discretion of a trial judge” by an appellate court on appeal where, as I view this record, the overwhelming weight of the evidence is that these children of tender years are being uprooted from a healthy family environment, primarily, to give their natural mother a second chance to be a good and wholesome mother to them. If this record does not demand an appellate review, then I would say that appeals of child custody orders have been, for all practical purposes, eliminated. Viewing the crowded docket of this Court, it is tempting to “wash our hands” and affirm upon the concept that the trial court is positioned to determine much more advantageously what is in the best interests of the minor children due to its opportunity to observe the demeanor and personalities of the parties and their witnesses, and to personally evaluate these individuals’ feelings, their sensitivities, powers and other influences. But this record speaks loud and clear. At the outset the mother exerted minimal efforts to fulfill a mother’s responsibility to these children when they were 9 months and 3 years of age. During *55 the ensuing three-year period, the mother exerted little effort to communicate with them or provide for their welfare. The father quit his employment in Tennessee, moved to Florida to be with his children, and did provide for them.
This record overwhelmingly reflects, in my opinion, that the welfare of these young children will be best provided by leaving them in the environment in which they have lived successfully for almost five years.

. The trial court observed : “In this instance, the Smiths have done everything from beginning to end in violation of a Tennessee court order. It’s true enough that Mrs. Kolgore agreed the grandparents could have custody. She also agreed, and apparently the grandparents agreed, to pose a five thousand dollar bond. There is no question that that bond was not posted as required. Mrs. Smith, and I am going to say senior, because really don’t remember names. Mr. Smith’s mother did receive copies of these petitions. And apparently did refuse to accept additional communication from the court up there. They have not complied with the order of the court, certainly. The court gave her custody and— her and her husband, and they immediately turned custody over to someone else who did not have the right to custody. What you are seeking now is a reward for ignoring the orders of the court. I think the children are probably happy here. I don’t think there is any doubt about it, really.”

. Dinkel v. Dinkel, Supreme Court, 322 So. 2d 22, 24, opinion filed August 14, 1975.